**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

|  |  |
|---|---|
| **BENJAMIN ROY,** **Individually and on behalf of all others similarly situated,** **Plaintiff,** v. **SENTURE, LLC** **Defendant.** | Case No. _3:25-CV-90-DJH_ **JURY TRIAL DEMANDED** **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** **CLASS ACTION PURSUANT TO FED. R. CIV. P. 23** **NATIONWIDE RELIEF SOUGHT** |

Plaintiff—Benjamin Roy—brings this action individually and on behalf of all current and former hourly call-center employees (collectively, "Plaintiff and the Putative Collective/Class Members"), who worked for Defendant—Senture, LLC ("Senture" or "Defendant")—anywhere in the United States, at any time during the relevant statutes of limitations, through the final disposition of this matter, to recover unpaid overtime compensation, liquidated damages, and attorneys' fees and costs pursuant to the provisions of Sections 207 and 216(b) of the Fair Labor Standards Act of 1938 ("FLSA"), as amended 29 U.S.C. §§ 201–19, and unpaid compensation, liquidated damages, and attorneys' fees and costs pursuant to the Kentucky Wage and Hour Act, KY. REV. STAT. ANN. §§ 337.010–337.994 ("Kentucky Acts").

**I.**
**OVERVIEW**

1.  This is a collective action to recover overtime wages and liquidated damages brought pursuant to the FLSA and a class action pursuant to the state laws of Kentucky under FED. R. CIV. P. 23, to recover unpaid wages and other applicable penalties.

2.      Plaintiff and the Putative Collective/Class Members are those similarly situated persons who worked for Senture in call centers or remotely at any time during the relevant time periods through the final disposition of this matter, and have not been paid for all hours worked nor the correct amount of wages, including overtime, in violation of state and federal law.

3.      Although Plaintiff and the Putative Collective/Class Members have routinely worked (and continue to work) in excess of forty (40) hours per workweek, Plaintiff and the Putative Collective/Class Members were not paid overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

4.      Likewise, Plaintiff and the Putative Collective/Class Members worked under forty (40) hours per workweek on occasion and were not fully compensated at their regular rate of pay for all hours worked.

5.      During the relevant time period(s), Senture knowingly and deliberately failed to compensate Plaintiff and the Putative Collective/Class Members for all hours worked each workweek and the proper amount of overtime on a routine and regular basis.

6.      Specifically, Senture's regular practice—including during weeks when Plaintiff and the Putative Collective/Class Members worked in excess of forty (40) hours (not counting hours worked "off-the-clock")—was (and is) to require the Plaintiff and the Putative Collective/Class Members to perform necessary and indispensable work—preparing their essential computer systems and programs—off-the-clock prior to starting their shift and at the end of their unpaid meal break (collectively, the "Start-Up Work").

7.      In addition to the unpaid Start-Up Work, Senture also refused to compensate the Plaintiff and the Putative Collective/Class Members for time spent performing troubleshooting on their computers, such as when the computer or its software would go down and require a restart,

password reset, or other types of work attempting to correct the computer or its software, so they could resume work (collectively, the "Technical Downtime Work").

8. The effect of Senture's practices were (and are) that all compensable time worked by Plaintiff and the Putative Collective/Class Members was not (and is not) counted and paid; thus, Senture has failed to properly compensate Plaintiff and the Putative Collective/Class Members for all hours worked and has failed to properly compensate them the proper amount of overtime under the FLSA and applicable state law.

9. Senture knowingly and deliberately failed to compensate Plaintiff and the Putative Collective/Class Members for all hours worked and the proper amount of overtime on a routine and regular basis during the relevant time period(s).

10. Plaintiff and the Putative Collective/Class Members did not and currently do not perform work that meets the definition of exempt work under the FLSA or applicable state law.

11. Plaintiff and the Putative Collective/Class Members seek to recover all unpaid overtime compensation, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b), and to recover all unpaid straight time and other damages owed under the state laws of Kentucky as a class action pursuant to FED. R. CIV. P. 23.

12. Plaintiff also pray that all similarly situated workers (Putative Collective Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

13. Plaintiff also prays that the Rule 23 class is certified as defined herein, with the Plaintiff designated herein named as the Class Representative.

## II.
## THE PARTIES

14.     Plaintiff—Benjamin Roy ("Roy")—was employed by Senture in Kentucky during the relevant time period(s). Plaintiff Roy did not receive compensation for all hours worked or the correct amount of overtime compensation for all hours worked in excess of forty (40) hours per workweek. [1]

15.     The FLSA Collective Members are those current and former hourly call-center employees[2] who were employed by Senture at any time from February 13, 2022, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff worked and were paid.

16.     The Kentucky Class Members are those current and former current and former hourly call-center employees who were employed by Senture in the State of Kentucky at any time from February 13, 2020, through the final disposition of this matter, and have been subjected to the same illegal pay system under which Plaintiff Roy worked and was paid.

17.     Defendant Senture, LLC is a domestic limited liability corporation, that is headquartered in, and licensed to do business in, the State of Kentucky and may be served through its registered agent for service of process: **CT Corporation System, 306 W. Main Street, Suite 512, Frankfort, Kentucky 40601.**

## III.
## JURISDICTION & VENUE

18.     This Court has federal question jurisdiction over Plaintiff's claims under the FLSA, 29 U.S.C. §§ 201–19, pursuant to 28 U.S.C. § 1331.

19.     This Court has supplemental jurisdiction over Plaintiff's additional state law claims

---

[1] The written consent of Benjamin Roy is attached hereto as Exhibit "A."

[2] Plaintiff's definition of "call center employees" include employees who handle inbound and outbound phone calls on behalf of Senture and who work either in call centers or remotely from their home.

pursuant to 28 U.S.C. § 1367 because they are so related to Plaintiff's claims under the FLSA that they form part of the same case or controversy.

20.     Plaintiff has not entered into an arbitration agreement that would affect the Court's subject-matter jurisdiction.

21.     This Court has general personal jurisdiction over Senture because Kentucky qualifies as their home state.

22.     Venue is proper pursuant to 28 U.S.C. § 1391 in the Western District of Kentucky because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

23.     Additionally, Senture's corporate headquarters are in London, Kentucky, which is located within this District and Division.

## IV.
## BACKGROUND FACTS

24.     Senture is a subsidiary of one of the World's largest outsourced customer contact service providers, Teleperformance.[3]

25.     To provide their services, Senture employed (and continues to employ) numerous Call Center Employees—including Plaintiff and the individuals that make up the putative or potential class.

26.     While exact job titles may differ, these hourly employees were subjected to the same or similar illegal pay practices for similar work throughout Senture's facilities in the United States.

### Unpaid Start-Up Work

27.     Plaintiff and the Putative Collective/Class Members were not (and continue to not be) compensated for all the hours they worked for Senture as a result of Senture's corporate policy and

---

[3] https://www.teleperformance.com/en-us/why-tp/about-tp/ (last visited on November 20, 2024).

practice of requiring all call-center employees to be ready to take their first phone call within minutes of clocking in.

28.    Specifically, Plaintiff and the Putative Collective/Class Members were (and continue to be) required to perform integral and indispensable tasks before clocking in. The Start-Up Work was necessary to prepare for their shifts and allow them to begin taking calls after clocking in. The Start-Up Work includes turning on computers and waiting for them to boot-up, opening and logging into the Virtual Protected Network; opening and logging into other client specific programs and databases, and reading emails.

29.    The Start-Up Work can take anywhere from ten (10) minutes up to thirty (30) minutes before each time the Plaintiff and Putative Collective/Class Members clock in.

30.    In weeks in which Plaintiff and the Putative Collective/Class Members worked fewer than forty (40) hours, the unpaid Start-Up Work qualified as unpaid straight time.

31.    In weeks in which the Plaintiff and the Putative Collective/Class Members worked forty (40) or more hours, the unpaid Start-Up Work qualified as unpaid overtime.

32.    Senture required (and continues to require) Plaintiff and the Putative Collectives/Class Members be ready to accept their first call within one minute of clocking in both at their start of shift and after clocking back in at the end of the meal break.

33.    Specifically, Plaintiff Roy's supervisor told him that he needed to be active and taking calls as soon as he clocks in. Plaintiff Roy's supervisor advised him to begin preparing his computer at least thirty (30) minutes prior to his shift start time, so that he would have enough time to prepare the computer, its systems, and deal with any potential technical issues so that he can be ready to take calls right at shift start.

34. If Plaintiff and the Putative Collective/Class Members did not complete their Start-Up Work before clocking in, they would not be prepared to take phone calls by their shift start time, they can be (and often are) subject to discipline.

35. Some of the Plaintiff and the Putative Collective/Class Members' Start-Up Work had to be performed before Plaintiff and the Putative Collective/Class Members could even access the clock in program.

36. Specifically, turning on the computer, logging into the computer, and logging into the Virtual Protected Network had to be performed before the Plaintiff and the Putative Collective/Class Members could log into the clock in program.

37. Even though Senture knew the Plaintiff and the Putative Collective/Class Members had to perform this work prior to even being able to access the clock in program, Senture does not credit them time for this work.

38. Senture consider time spent turning on the computer, logging in to the desktop, and logging into the Virtual Protected Network and other similar security programs to be non-compensable work.

39. After turning on the computer, logging in, and logging into all of the security programs, Plaintiff and the Putative Collective/Class Members could then access their programs and databases.

40. Plaintiff and the Putative Collective/Class Members were required by Senture to open and stabilize all of their programs and databases prior to going active on the dialer program.

41. Should a Plaintiff or Putative Collective/Class Member go active on the dialer program and begin taking calls before the programs were open and stabilized, the Plaintiff or Putative Collective/Class Member would not be able to access information and material critical to help the

caller, such as plan information, customer data, provider data, health care records, billing information, or other sensitive information.

42.  Because the programs and databases could take several minutes to open and stabilize, Plaintiff and the Putative Collective/Class Members could not clock in until the programs were open and stabilized, otherwise they could receive discipline for being active on the dialer within a minute of clocking in.

43.  Therefore, the only way to be ready and have completed the Start-Up Work on time, and avoid discipline, is to complete the Start-Up Work off-the-clock and without pay.

44.  Senture knew the Start-Up Work took a substantial amount of time and encouraged performing the Start-Up Work off-the-clock.

45.  Although this start-up time is necessary and integral to their job duties, Plaintiff and the Putative Collective/Class Members have not been compensated for this time.

46.  As such, Senture required (and continues to require) that Plaintiff and the Putative Collective/Class Members perform the Start-Up Work "off-the-clock" before they clock in.

**Unpaid Technical Downtime**

47.  Further, Plaintiff and the Putative Collective/Class Members regularly encountered technical difficulties such as computer crashes, software crashes, and security access errors multiple times each week that required the Plaintiff and the Putative Collective/Class Members to reboot their computers, reset software systems, reset passwords, and contact Senture's technical support team.

48.  The Technical Downtime Work could take anywhere from ten (10) minutes to over one (1) hour to complete depending on the severity of the issue.

49.  Notably, Plaintiff and the Putative Collective/Class Members were not compensated for their Technical Downtime Work.

50.     Although Senture had previously paid Plaintiff and the Putative Collective/Class Members for time spent performing Technical Downtime Work, Senture altered their policy in May of 2022 to require their Call Center Employees to clock out while performing Technical Downtime Work.

51.     On May 9, 2022, Plaintiff Roy's supervisor, Taylor Carter, relayed the change in policy to Plaintiff Roy and his co-workers in an email, part of which is shown below.

We will NO LONGER pay for down time. This means if you are having a system issue of any kind – including password issues- you will have to be clocked out until it is resolved. One reason is we have MANY people that are

52.     Although they are required to clock out during Technical Downtime, Senture still require the Plaintiff and Putative Collective/Class Members to actively troubleshoot their computers, trying to fix them, so they may resume their normal work.

53.     Senture knew the Technical Downtime Work took a substantial amount of time and required Plaintiff and the Putative Collective/Class Members to perform the Technical Downtime Work off-the-clock.

54.     Although this Technical Downtime Work is necessary and integral to their job duties—in that they cannot perform their work unless the computer and its systems are working—Plaintiff and the Putative Collective/Class Members have not been compensated for this time.

55.     As such, Senture required (and continues to require) that Plaintiff and the Putative Collective/Class Members perform the Technical Downtime Work "off-the-clock".

56.     As a result of Senture's company-wide policy and practice requiring Plaintiff and the Putative Collective/Class Members to perform their Start-Up Work and Technical Downtime Work

off-the-clock, Plaintiff and the Putative Collective/Class Members were not compensated for all hours worked, including all worked in excess of forty (40) in a workweek at the rates required by the FLSA.

57.    Senture was (and continues to be) aware of their obligation to pay Plaintiff and the Putative Collective/Class Members for all hours worked and pay the proper amount of overtime for all hours worked in excess of forty (40) each week but has failed to do so.

58.    Because Senture did not pay Plaintiff and the Putative Collective/Class Members for all hours worked and time and a half for all hours worked in excess of forty (40) in a workweek, Senture's pay policies and practices violate the FLSA and the state laws of Kentucky alleged herein.

59.    Because Senture did not pay Plaintiff and the Putative Collective Members time and a half for all hours worked in excess of forty (40) in a workweek, Senture's pay policies and practices willfully violate the FLSA.

60.    Specifically, Plaintiff Roy complained to his manager on numerous occasions, stating that it was illegal for Senture to refuse to pay for both the Start-Up Work and Technical Downtime Work.

61.    Senture ignored Plaintiff Roy's warnings.

62.    Because Senture did not pay Plaintiff and the Putative Class Members for all hours worked within the time frame required by the state laws of Kentucky, Senture's pay policies and practices also violate the state laws of Kentucky.

## V.
## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Collective Action Alleging FLSA Violations)**

**A.    FLSA COVERAGE**

63.    The preceding paragraphs are incorporated as though fully set forth herein.

64.    The "FLSA Collective" and "FLSA Collective Members" are defined as follows:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY SENTURE, LLC, AT ANY TIME FROM FEBRUARY 13, 2022, THROUGH THE FINAL DISPOSITION OF THIS MATTER.**

65.     At all material times, Senture has been an employer within the meaning of the FLSA, 29 U.S.C. § 203(d).

66.     At all material times, Senture has been an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

67.     At all material times, Senture has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in the operation of insurance and commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that that enterprise has had, and has, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

68.     Specifically, Senture employs numerous call-center employees to provide services across the United States, purchase materials through commerce, transport materials through commerce and on the interstate highways, and conduct transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

69.     During the respective periods of Plaintiff and the FLSA Collective Members' employment by Senture, these individuals provided services for Senture that involved interstate commerce for purposes of the FLSA.

70.     In performing work for Senture, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

71.     Specifically, Plaintiff and the FLSA Collective Members are (or were) hourly employees who assisted Senture's customers and employees throughout the United States. 29 U.S.C. § 203(j).

72.     At all material times, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

73.     The proposed classes of similarly situated employees—that is, the FLSA collectives sought to be certified pursuant to 29 U.S.C. § 216(b), are defined in Paragraph 64.

74.     The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee and personnel records of Senture.

**B.      FAILURE TO PAY WAGES AND OVERTIME UNDER THE FLSA**

75.     Senture violated the FLSA, 29 U.S.C. §§ 207 and 215(a)(2), by employing individuals in an enterprise engaged in commerce, the operation of insurance sales, or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such non-exempt employees for all the hours they worked in excess of forty (40) hours per week at rates at least one and one-half times the regular rates for which they were employed.

76.     Moreover, Senture knowingly, willfully, and with reckless disregard carried out their illegal pattern of failing to pay Plaintiff and other similarly situated employees the proper amount of overtime compensation for all hours worked over forty (40) each week. 29 U.S.C. § 255(a).

77.     Senture knew or should have known their pay practices were in violation of the FLSA.

78.     Senture is a sophisticated party and employer, and therefore knew (or should have known) their pay policies were in violation of the FLSA.

79.     Plaintiff and the FLSA Collective Members, on the other hand, are (and were) less sophisticated employees who trusted Senture to pay them according to the law.

80.    The decision and practice by Senture to not pay Plaintiff and the FLSA Collective Members overtime for all hours worked over forty (40) each week was willful, and was neither reasonable nor in good faith.

81.    Accordingly, Plaintiff and the FLSA Collective Members are entitled to be paid overtime wages for all hours worked in excess of forty (40) hours per workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

C.    **COLLECTIVE ACTION ALLEGATIONS**

82.    All previous paragraphs are incorporated as though fully set forth herein.

83.    Pursuant to 29 U.S.C. § 216(b), Plaintiff bring this action collectively on behalf of Senture's employees who are (or were) similarly situated to Plaintiff with regard to the work they performed and the manner in which they were paid.

84.    Other similarly situated employees of Senture have been victimized by Senture's patterns, practices, and policies, which are in willful violation of the FLSA.

85.    The FLSA Collective is defined in Paragraph 64.

86.    Senture's failure to pay Plaintiff and the FLSA Collective Members overtime compensation at the rates required by the FLSA, results from generally applicable policies and practices of Senture, and does not depend on the personal circumstances of Plaintiff or the FLSA Collective Members.

87.    Thus, Plaintiff' experiences are typical of the experiences of the FLSA Collective Members.

88.    The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

89.     All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated their overtime wages for all hours worked in excess of forty (40) each week.

90.     Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

91.     Absent a collective action, many members of the proposed FLSA collectives will not likely obtain redress of their injuries and Senture will retain the proceeds of their violations.

92.     Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

93.     Accordingly, notice of the action should be promptly sent to the FLSA collective of similarly situated Plaintiff as in Paragraph 64.

**SECOND CAUSE OF ACTION**
**(Class Action Alleging Violations of the Kentucky Acts)**

**A.     KENTUCKY ACTS COVERAGE**

94.     All previous paragraphs are incorporated as though fully set forth herein.

95.     The "Kentucky Class" and "Kentucky Class Members" are defined as:

**ALL HOURLY CALL-CENTER EMPLOYEES WHO WERE EMPLOYED BY SENTURE, LLC, IN THE STATE OF KENTUCKY, AT ANY TIME FROM FEBRUARY 13, 2020, THROUGH THE FINAL DISPOSITION OF THIS MATTER.**

96.     At all material times, Senture has been an "employer" as defined by the Kentucky Acts. *See* KY. REV. STAT. ANN. § 337.010(d).

97.     At all material times, Plaintiff Roy and the Kentucky Class Members were Senture's "employees" as defined within the Kentucky Acts. *See* KY. REV. STAT. ANN. § 337.010(e).

98.    Senture—the "employer"—is not exempt from paying wages and overtime benefits under the Kentucky Acts.

## B.    FAILURE TO PAY WAGES IN ACCORDANCE WITH THE KENTUCKY ACTS

99.    All previous paragraphs are incorporated as though fully set forth herein.

100.    The Kentucky Acts require that "[e]very employer doing business in [Kentucky] shall . . . pay to each of its employees all wages or salary earned to a day not more than eighteen (18) days prior to the date of that payment." KY. REV. STAT. ANN. § 337.020.

101.    Senture has willfully failed to pay Plaintiff Roy and the Kentucky Class Members for all hours they worked.

102.    Specifically, Senture failed (and continue to fail) to pay all compensation earned for work performed by Plaintiff Roy and the Kentucky Class.

103.    Plaintiff Roy and the Kentucky Class Members have suffered damages and continue to suffer damages as a result of Senture's acts or omissions as described herein, and Senture is in possession and control of necessary documents and information from which Plaintiff Roy would be able to precisely calculate damages.

104.    Plaintiff Roy, on behalf of himself and the Kentucky Class Members, seeks recovery of their unpaid wages and an additional equal amount as liquidated damages, attorneys' fees, costs, and reasonable expenses of this action to be paid by Senture. *See* KY. REV. STAT. ANN. §337.385.

105.    The proposed class of putative class members sought to be certified pursuant to the Kentucky Acts is defined in Paragraph 95.

106.    The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Senture.

C.      **KENTUCKY CLASS ALLEGATIONS**

107.    Plaintiff Roy and the Kentucky Class Members bring their Kentucky Acts claim as a class action pursuant to FED R. CIV. P. 23 on behalf of all similarly situated individuals employed by Senture to work in Kentucky since February 13, 2020.

108.    Class action treatment of Plaintiff Roy and the Kentucky Class Members' claims is appropriate because, as alleged below, all of Rule 23's class action requisites are satisfied.

109.    The number of Kentucky Class Members is so numerous that joinder of all class members is impracticable.

110.    Plaintiff Roy's Kentucky state-law claims share common questions of law and fact with the claims of the Kentucky Class Members.

111.    Plaintiff Roy is a member of the Kentucky Class, his claims are typical of the claims of other Kentucky Class Members, and he has no interests that are antagonistic to or in conflict with the interests of other Kentucky Class Members.

112.    Plaintiff Roy and his counsel will fairly and adequately represent the Kentucky Class Members and their interests.

113.    Class certification is appropriate under Rule 23(b)(3) because common questions of law and fact predominate over questions affecting only individual class members and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Accordingly, the Kentucky Class should be certified as defined in Paragraph 95.

**VI.**
**RELIEF SOUGHT**

114.    Plaintiff respectfully prays for judgment against Senture as follows:

        a.      For an Order certifying the FLSA Collective as defined in ¶ 64;

b.      For an Order approving the form and content of a notice to be sent to the FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c.      For an Order pursuant to § 16(b) of the FLSA finding Senture liable for unpaid wages, including unpaid overtime wages, due to Plaintiff (and those FLSA Collective Members who have joined in the suit), and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

d.      For an Order certifying the Kentucky Class as defined in ¶ 95, and designating Plaintiff Roy as Representative of the Kentucky Class;

e.      For an Order pursuant to the Kentucky state law awarding Plaintiff Roy and the Kentucky Class Members damages for unpaid wages and all other damages allowed by law;

f.      For an Order awarding the costs of this action;

g.      For an Order awarding attorneys' fees;

h.      For an Order awarding pre-judgment and post-judgment interest at the maximum legal rate;

i.      For an Order awarding Plaintiff Roy a service award as permitted by law;

j.      For an Order compelling the accounting of the books and records of Senture, at Senture's expense (should discovery prove inadequate); and

k.      For an Order granting such other and further relief as may be necessary and appropriate.

Date: February 17, 2025                                Respectfully submitted,

                                                       **ANDERSON ALEXANDER, PLLC**

                                        By:     /s/ *Clif Alexander*
                                                **Clif Alexander** *(Pro Hac Vice Anticipated)*
                                                Texas Bar No. 24064805
                                                clif@a2xlaw.com
                                                **Austin W. Anderson** *(Pro Hac Vice Anticipated)*
                                                Texas Bar No. 24045189
                                                austin@a2xlaw.com
                                                **Carter Hastings** *(Pro Hac Vice Anticipated)*
                                                Texas Bar No. 24101879
                                                carter@a2xlaw.com
                                                101 N. Shoreline Blvd, Suite 610
                                                Corpus Christi, Texas 78401
                                                Telephone: (361) 452-1279
                                                Facsimile: (361) 452-1284


                                                **THE LAWRENCE FIRM, PSC**

                                        By:     /s/ *Anne L. Gilday*
                                                Anne L. Gilday (KY Bar ID: 90126)
                                                535 Madison Avenue, Suite 500
                                                Covington, KY 41011
                                                Telephone: 859-578-9130
                                                Fax: 859-578-1032
                                                anne.gilday@lawrencefirm.com

                                                *Counsel for Plaintiff and Putative*
                                                *Collective/Class Members*